| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br><br>MICHAEL GULINO and<br>CHRISTOPHER FERRY,<br>individually and on behalf of others<br>similarly situated,<br><br>                Plaintiffs,<br><br>     -against-<br><br>SYMBOL TECHNOLOGIES, INC.,<br><br>                Defendant.<br>-----------------------------------------------------------x | FOR ONLINE PUBLICATION ONLY<br><br><br><br><br><br><br>MEMORANDUM AND<br><u>ORDER</u><br>06 CV 2810 (JG)(AKT) |

A P P E A R A N C E S :

    GETMAN LAW OFFICE
        9 Paradies Lane
        New Paltz, NY 12561
    By:   Dan Getman
           Michael J.D. Sweeney
           Attorneys for Plaintiffs

    MORGAN, LEWIS & BOCKIUS LLP
        101 Park Avenue
        New York, NY 10178
    By:   Christopher A. Parlo
           Maral A. Kazanjian
           Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        Plaintiffs Michael Gulino and Christopher Ferry bring this putative class action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law ("NYLL"), alleging that defendant Symbol Technologies failed to make required overtime payments to them and similarly situated call center telephone support staff. No notice has yet been given under the FLSA's collective action provision, 29 U.S.C. § 216(b), and no class has

yet been certified under Federal Rule of Civil Procedure 23 for the plaintiffs' state law claims. Gulino, Ferry, and Symbol Technologies have submitted a proposed settlement agreement. Inasmuch as Gulino and Ferry seek to represent a class of 28 other present and former Symbol Technologies employees, and the settlement agreement seeks to resolve all claims of members of that class who do not opt out, the settlement requires my approval. *See* Fed. R. Civ. P. 23(e). For the reasons stated below, I decline to approve it.

BACKGROUND

Gulino and Ferry allege that during their time working for Symbol Technologies' technical support call center, they and other putative class members regularly worked in excess of 40 hours a week without receiving time-and-a-half compensation. This practice allegedly continued until October 2004, when Symbol Technologies changed its payment practices and began to pay the required time-and-a-half compensation.

On May 26, 2006, Gulino and Ferry sued on behalf of themselves and the rest of the putative class of call center technical support specialists. Discovery was stayed several times in light of ongoing settlement discussions. On September 17, 2007, the parties proposed a settlement agreement which would resolve all claims of the class members who do not opt out. The proposed settlement would provide a fund of $120,000 for overtime pay covering the period between June 1, 2003 and August 31, 2004 and a fund of $13,000 for liquidated damages covering the period between June 1, 2004 and August 31, 2004. Settlement § III.3.1. Each class member would receive a payment based on overtime hours worked during the overtime period and the liquidated damages period. The anticipated total payment to each absent class member ranges from $223.07 to $15,362.76, with the vast majority under $5000. Estimate of Anticipated Payments to Class Members, Sept. 28, 2007, at 2. The named plaintiffs would receive

$21,692.24 and $20,642.80 in such payments. *Id.* In addition to these payments and anticipated attorneys' fees, the settlement agreement also provides for the defendants to pay each of the named plaintiffs a $30,000 incentive payment in recognition of "their services on behalf of the class." Settlement § IV.4.1.

DISCUSSION

A proposed settlement of a class action must be approved by a district court. Fed. R. Civ. P. 23(e). The fairness of a proposed settlement has both a procedural and a substantive element. *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982)), *aff'd*, 424 F.3d 132 (2d Cir. 2005). The procedural component focuses on the "negotiating process by which the settlement was reached." *Weinberger*, 698 F.2d at 73. "The process must be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.'" *Holocaust Victim Assets*, 105 F. Supp. 2d at 145-46 (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).

The most common threat to an untainted settlement process in a class action is the financial interest of class counsel, "who may be improperly influenced to accept certain settlement terms, or to accept a settlement at all, thereby 'subordinat[ing] the interests of class members to the attorney's own self-interest.'" *Holocaust Victim Assets*, 105 F. Supp. 2d at 145-46 (quoting John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370, 371-72 (2000)). The proposed settlement in this case implicates another threat: incentive payments to the class representatives. If, as in this settlement, class representatives receive "special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of class

3

members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) (Nickerson, J.) (citing *Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977)).

Factors relevant to the substantive fairness of a proposed settlement include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

Payments to class representatives can properly be included in class action settlements to the extent they are needed to compensate the named plaintiffs for the efforts they have made on behalf of the class. *Sheppard v. Consol. Edison Co.* (*Sheppard I*), No. 94-CV-403 (JG), 2000 WL 33313540, at *5 (E.D.N.Y. Dec. 21, 2000) (citing *Thornton v. E. Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974); *Women's Comm.*, 76 F.R.D. at 182); *see also Sheppard v. Consol. Edison Co.* (*Sheppard II*), No. 94-CV-403 (JG), 2002 WL 2003206, at *5 (E.D.N.Y. Aug. 1, 2002) ("Such awards are not uncommon and can serve an important function in promoting class action settlements."). Courts in this circuit consider the following factors in approving these awards:

> The existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*Sheppard II*, 2002 WL 2003206, at *5 (quoting *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)); *accord Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Sheppard II*, 2002 WL 2003206, at *6 n.9 ("A powerful basis for separate awards to named plaintiffs in class action settlements is the need to reimburse them for specific expenses they have incurred, including out-of-pocket costs of asserting the litigation, the use of leave time in order to attend depositions and other such costs."). However, although payments can be made to compensate named plaintiffs for hardships caused by the action, class representatives are fiduciaries of the absent class members, and are expected to endure the ordinary inconveniences of litigation without special compensation. *Sheppard I*, 2000 WL 33313540, at *5 (citing *Weseley*, 711 F. Supp. at 720).

Here, the incentive payments proposed are inconsistent with the plaintiffs' fiduciary obligations to the absent class members. The $30,000 incentive payment each named plaintiff receives is almost 150% of the amount that each named plaintiff recovers in compensatory and liquidated damages, and is almost 200% of the amount that the most highly compensated absent class member receives. *Cf. Roberts*, 979 F. Supp. at 202-03 (approving an incentive award that was approximately 106% of highest non-incentive payment and calling such award "an upward departure from cited precedent" in a case where the plaintiff was threatened with physical violence after filing the action); *cf. also* Sherrie R. Savett, et al., Consumer Class

Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs, in *Financial Services Litigation*, at 321, 340-45 (PLI Corp. L. & Prac., Course Handbook Series No. 936, 1996) (citing 52 cases approving incentive payments and noting that "such payments are normally in the range of $1,000 to $5,000"). Indeed, comparing the incentive awards to the next highest payment understates their relative size, as the majority of the payments are much lower. Each incentive payment is over 4 times the mean anticipated payment,[1] and over 13 times the median anticipated payment.[2]

Comparing the incentive awards to the total amount of the settlement confirms that the proposed settlement overcompensates the named plaintiffs. The $60,000 set aside for incentive payments is almost one third of the entire fund of $193,000 (exclusive of attorneys' fees). Including compensatory and liquidated damage payments, the two named plaintiffs receive a total of approximately $102,335 of the $193,000, leaving the other 28 class members to split the remaining amount of just under $90,665. In short, too much of the defendants' award is directed to the named plaintiffs for me to find this settlement fair to the absent class members. *See Sheppard I*, 2000 WL 33313540, at *7 ("[C]lass representatives are naturally more inclined to accept a settlement that is not in the best interests of the absent class members they represent if the named plaintiffs are permitted to receive an award in addition to their share of the recovery. The larger the award, the greater the inclination will be.").

## CONCLUSION

For the reasons stated above, I decline to give my approval to the foregoing settlement. Should the parties reach a new settlement, they are directed to provide the Court with

---

[1] This mean, approximately $6433.33, is based on a total fund inclusive of the incentive payments. If the mean is calculated by dividing the total non-incentive payments by the number of class members, the mean is approximately $4433.33, and each incentive payment is over 6 times the mean.

[2] The median total payment to any class member is approximately $2215.63.

a list of anticipated payments to be made to each class member.  Should a new settlement include any incentive payments to plaintiffs, the parties should provide an explanation and justification for the amount of such payments.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
October 17, 2007